O

# United States District Court
# Central District of California

| | |
|---|---|
| CONNEX RAILROAD LLC;<br>TRANSDEV NORTH AMERICA, INC., | Case № 2:16-cv-02368-ODW (RAOx) |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS* [14]** |
| v. | |
| AXA CORPORATE SOLUTIONS ASSURANCE; and DOES 1 – 10, | |
| Defendants. | |

## I. INTRODUCTION

Presently before the Court is Defendant AXA Corporate Solutions Assurance's ("AXA") Motion to Dismiss for *forum non conveniens*. (ECF No. 14.) The underlying dispute concerns allegations of bad faith by AXA in its capacity as Plaintiffs' insurance provider. (Compl. ¶¶ 1, 24.) The parties disagree on several points, most pivotally whether French law or federal common law governs the interpretation of the Policy at issue, and whether a United States district court or a French court has a stronger interest in adjudicating the matter. Though this Court concludes that Defendant is correct regarding the choice of law for interpreting the Policy's forum selection clauses, the Court also determines that the public interest factors and the overall circumstances of the case strongly favor litigation in this

district rather than in France. For this reason, discussed in more detail below, the Court **DENIES** Defendant's Motion to Dismiss for *forum non conveniens*.[1]

## II. BACKGROUND

This case stems from the 2008 Metrolink commuter train accident in Chatsworth, California. (Compl. ¶ 15.) Plaintiffs were the operators of the Metrolink train involved in the accident, and AXA was an insurer of excess coverage insurance for Plaintiffs and their parent company. (Compl. at ¶¶ 13, 24-27.) Plaintiffs faced numerous personal injury claims following the accident. (Compl. at ¶ 19.) Plaintiffs' present claims against AXA are based on allegations regarding AXA's conduct in resolving those personal injury claims. (Compl. at ¶¶ 41-55.) In short, Plaintiffs now allege that AXA fraudulently induced them to settle the personal injury claims by making representations that later turned out to be false, including representations that AXA would negotiate with Plaintiffs' other insurers in good faith to resolve the issue of contributions toward Plaintiffs' settlement amount and would arbitrate the issue if necessary. (Compl. at ¶¶ 41-55.)

Defendant now moves to dismiss the action for *forum non conveniens*, arguing that France is the proper forum to handle this dispute. (Def. Mot. 1.) The existence of a forum selection clause in the Policy, requiring certain disputes arising therefrom to be litigated in France, is not in contention. (*See* Def. Mot. 2; Pl. Opp'n 5-6.) There is also a choice-of-law provision requiring the application of French law to any such dispute. (Def. Mot. 2.) Nonetheless, the parties disagree about whether these provisions apply to the dispute at issue here, and regardless of the outcome to that question, whether there are other valid reasons to dismiss the action for *forum non conveniens*. (*See* Def. Mot. 2-3; Pl. Opp'n 1-2.)

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

### III. LEGAL STANDARD

A forum selection clause is interpreted under the federal common law. *See, e.g., TAAG Linhas Aereas de Angloa v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990). Though the issue most often arises in disputes over whether to apply state versus federal law, at least one district court has interpreted Ninth Circuit precedent to mean that district courts sitting in diversity "must interpret forum-selection clauses under federal common law, without regard to *any* choice-of-law provisions in the subject agreement." *Kiland v. Boston Sci. Corp.*, No. C10-4105 SBA, 2011 WL 1261130, at *4 (N.D. Cal. Mar. 31, 2011) (emphasis added). This Court agrees.

Where a valid forum selection clause exists, and a plaintiff has elected to file suit in a different forum, the court in most cases should give the clause controlling weight. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). However, it is "conceivable in a particular case" that a court would refuse to transfer or dismiss the case despite the existence of a valid forum-selection clause. *Id.* at 582 (internal citations omitted). *Atlantic Marine* notes the overarching policy consideration in these cases: "[w]hen parties have contracted in advance to litigate in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 583. But where public-interest factors outweigh those expectations, a district court may nevertheless refuse to transfer or dismiss the case. *Id.*; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988). Relevant public interest factors to be weighed include: (1) the local interest in the case; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion of cases before the court; and (5) the costs of resolving litigation unrelated to a particular forum. *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).

## IV. DISCUSSION

The issue of whether French or federal common law governs the interpretation of the forum selection clause in the Policy is determinative of whether the clause is valid in the present litigation. Plaintiffs argue that French law governs, which they maintain would disqualify the clause from applying to them as non-signatories to the Policy. (Pl. Opp'n 7-8.) Defendant's position is that federal law governs, under which the clause would be binding on Plaintiffs despite their non-signatory status. (Def. Reply 1-3.) Because federal common law governs the interpretation of the forum selection clause in the Policy at issue, the clause applies to the Plaintiffs even as non-signatories. *See TAAG Linhas Aereas de Angola*, 915 F.2d at 1353. Plaintiffs cite to instances of Ninth Circuit cases that apply law other than federal to interpret forum selection clauses, but these cases do so incidentally, without stating a clear rule. *See E.J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006); *cf. TAAG Linhas Aereas de Angola*, 915 F.2d at 1353 (stating, as a rule, that "[f]ederal law governs the validity of a forum selection clause").

Further, Plaintiffs' status as non-signatories to the Policy does not preclude them from being subject to the forum selection and choice of law clauses. Ninth Circuit precedent holds that similarly situated parties are bound to forum-selection clauses. *See, e.g.*, *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (concluding that parties and non-parties/signatories to a contract should benefit from and be subject to forum selection clauses where the alleged conduct is closely related to the contractual relationship). There is a valid and applicable forum selection clause in the Policy at issue, meaning that the abridged *Atlantic Marine forum non conveniens* analysis should be used. 134 S. Ct. at 582.

*Atlantic Marine* still leaves room for the Court to refuse to dismiss the case. *Id.* Application of the public interest factors from *Boston Telecommunications* shows that there is a local interest in this case. *See* 588 F.3d at 1211. As to the first factor, a district court located in California has a local interest in the action where the case

implicates causes of action or remedies that are important to California public policy. Where bad faith is alleged against an insurer, and the alternative forum provides no cause of action or remedies for such allegations, California has a "materially great[]" interest in litigating the dispute in its district courts instead of dismissing or transferring the case. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1170 (S.D. Cal. 2015). There is a strong local interest in the present case because litigating the case in France would not provide for remedies based on Plaintiffs' claims of bad faith against AXA. (*See* ECF No. 17 ¶ 29; Mee Decl. ¶ 19.) An insured's right to bring bad faith claims for tort and punitive damages against an insurer is fundamental to California's public policy in this area. *See* Cal. Civ. Code § 1668. The harm that Plaintiffs allegedly suffered due to AXA's false representations occurred in California, and Plaintiffs also allege that AXA failed to fulfill its contractual obligations in California. (Pl. Opp'n at 17.) This demonstrates that the circumstances of this case are such that there is a strong local interest in adjudicating it here, rather than allowing the matter to be litigated in France.

Moreover, the other public interest factors listed in *Boston Telecommunications* are either neutral or weigh in favor of keeping this case in a district court in California. *See* 588 F.3d at 1211. For example, the final factor, which is the costs of resolving litigation unrelated to a particular forum, is inapplicable because the litigation is not unrelated to this forum. The Court is satisfied that Plaintiffs' summary of the locations, dispositions, and languages of documents and witnesses persuasively supports their argument that the case should remain in this Court. (Pl. Opp'n at 21-22.) Defendant's conclusory language suggesting that documents and witnesses are inaccessible or will require interpretation and translation from French into English does not overcome Plaintiffs' much more specific assertions that witnesses and documents would be accessible to this Court. (Def. Mot. at 13.)

## V. CONCLUSION

For the reasons discussed above, the Court concludes that the balance of factors

weighs in favor of litigating the case in this district. Notwithstanding the forum-selection and choice-of-law language in the underlying insurance policy, the Court determines that there is a strong local interest in the case and therefore **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

September 16, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**